UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

:

**AMERICAN INTEGRATED SECURITY
GROUP, INC.,**

:

                    Plaintiff,      :  **MEMORANDUM DECISION AND
ORDER**

:

    – against –               22-CV-2773 (AMD) (MMH)

:

**TERRA SOUND TECHNOLOGY LLC** and
**FERUS SECURITY PARTNERS, LLC,**

:

                   Defendant.

-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff, American Integrated Security Group, Inc. ("AISG"), sued Ferus Security

Partners, LLC ("Ferus") and Terra Sound Technology, LLC ("Terra") for tortious interference

with current and prospective business relations, misappropriation of confidential information and

unfair competition.  Ferus moves to dismiss for lack of personal jurisdiction and improper venue.

For the following reasons, the motion is denied.

**BACKGROUND**

      AISG is a Queens, New York company that "designs, engineers and installs security

systems."  (ECF No. 29 at 2.)  It specializes in "open platform integrated systems, including IP

video surveillance, access control and security intrusion, perimeter protection, and a full range of

related wireless security technologies."  (*Id*.)  Consequently, AISG possesses confidential and

proprietary information about its customers "and the services and equipment it provides to

them."  (ECF No. 7 ¶ 28.)  This information is not available to the public.  AISG employees can

get access to this information only through a virtual private network using a unique username

and password.  (*Id*. ¶ 29.)  Michael Bennett was one such employee.

In October 2011, AISG hired Bennett to cultivate industry contacts and maintain customer relationships.  AISG claims that these relationships "would never have developed but for [Bennett's] role at AISG as a salesman."  (*Id.* ¶ 31.)  On June 20, 2018, Bennett signed a Restrictive Covenant Agreement (the "RCA"), promising to not solicit business from AISG customers for two years after leaving the company.[1]  (*Id.* ¶ 33.)  Bennett also agreed not to compete with AISG for one year,[2] or to "use or disclose AISG's proprietary information other than in the course of his duties and responsibilities as an AISG employee . . . ."  (*Id.* ¶¶ 34–35.) The RCA "is a New York contact, governed by New York law."  (ECF No. 29 at 2; ECF No. 29-3 ¶ 9).  Bennett resigned on February 19, 2021 (ECF No. 29-3 ¶ 51); according to AISG, Terra hired him as its Senior Vice President of Sales "[i]mmediately upon his resignation" (ECF No. 29 at 3).

AISG says that as early as June 2020, Bennett coordinated with Craig Borkowski, the CEO of Terra, and Byron Luber, the managing member of Ferus, to "leave AISG and take a number of new and prospective AISG customer projects with him to Terra [] and/or Ferus." (ECF No. 7 ¶ 38.)  It cites a June 23, 2020 communication between Bennet and Luber, "who is believed to have a business relationship with Bennett and Terra Sound," (*id.* ¶ 40), in which they devised a plan "to wrongfully solicit away AISG's customers" (*id.* ¶ 41).

---

[1] "The Associate agrees . . . that subsequent to the Associate's termination of employment with AISG . . . the Associate, for a period of two (2) years after termination, shall not directly or indirectly, solicit, engage in negotiations, recruit, contact or enlist others to do the same, and Business Interests, AISG customers, clients or potential clients of AISG including but not limited to any customers, client or prospective clients related to the Proprietary Information of AISG."

[2] "The Associate agrees . . . that for a period of one (1) year following termination of employment with AISG, and within one hundred (100) miles of the assigned market areas of the Associate, if applicable to the Associate, the Associate shall refrain from and restrict him/herself from competing with, engaging in or interfering with the Business Interests of AISG or engaging or participating in any activities which are the same or substantially similar to the Business Interests of AISG."

For example, in October 2020, AISG sent a proposal to one of its main customers, Clearway Energy Group, for a project in Hawaii that was to take place in three phases.  Clearway is "one of the largest developers and operators of clean energy" with "projects in 26 states across the country," including New York,[3] and has been an AISG customer since 2012.  (ECF No. 29-3 ¶ 5.)  AISG finished the first phase of the Hawaii project, but it alleges that on January 21, 2021, "Bennet sent Luber and Terra Sound the very same proposal to attempt to solicit away the second phase of the project and AISG's customer."  (*Id*. ¶42.)  According to AISG, it has been able to "confirm many of the allegations made in the Complaint," (ECF No. 29-3 ¶ 12), including that Ferus was added to Clearway's approved vendor list (*id*. ¶ 13), that AISG was eventually "removed [] as a vendor from [Clearway's] Security Standards" (*id*. ¶ 14), and that "Ferus is named on [Clearway's] security system drawing and diagrams"—when these diagrams and the design and engineering information "were all provided to Clearway by AISG's engineers" (*id*. ¶ 15).[4]

Although to date AISG has not worked on any New York-based Clearway projects, it sees Clearway's "New York sites" as "prospective business" opportunities from a long-time customer, as those sites also "require security surveillance."  (*Id*.)  AISG's "confidential trade secrets" are "developed, designed and maintained in AISG's New York office specifically for its customers, both in and outside of New York."  (ECF No. 29 at 3.)  The Clearway diagrams,

---

[3] According to a declaration by Levy Acs, President and Chief Technology Officer of AISG, Clearway has "three solar energy sites in the Hudson Valley and apparently many more in development;" those energy sites "are located at Minisink Solar Farm, in Minisink, NY, the Crans Mill Solar Farm in Pine Bush, NY, and the Bluestone Solar Farm in Kingston, NY."  (ECF No. 29-3 ¶ 5.)

[4] AISG also cites page 23 of ECF No. 29-3, Ex. 4, in which "AISG's name still appears on the diagram because Ferus apparently neglected to remove it," and "Ferus simply copied AISG's diagrams and engineering specifications and submitted them to Clearway with its name on them."  (ECF No. 23-3 ¶15.)

allegedly identical to those developed by AISG engineers, are "used for all Clearway projects, including those in New York."  (*Id*. ¶ 16.)

AISG further alleges that in December 2021, it gave another customer—Mortenson Company—a quote for two security system projects "intended for Clearway."  (*Id*. ¶ 19.)  It provided "all of its trade secret engineering specifications" for those projects.  (*Id*.)  AISG did not hear back from Mortenson, and "was later advised [in April 2022] that the projects had gone to Ferus."  (*Id*. ¶ 19–20.)  AISG states that these specifications were specifically engineered [by AISG engineers] in New York using AISG's proprietary and confidential information located in New York."  (ECF No. 29 at 5.)

In November 2022, Ferus moved to dismiss AISG's amended complaint.  (ECF No. 28.) Ferus argues that the Court does not have personal jurisdiction for the following reasons:  Ferus is a Missouri limited liability company; its registered office is in St. Louis, Missouri; it is not registered to do business in New York; and Luber "has not physically entered the state of New York in approximately twenty years."  (ECF No. 28-1 at 2.)  Thus, according to Ferus, "[t]here is no sufficient nexus connecting the alleged activities of . . . Ferus, a Missouri-based company, to New York."  (*Id*. at 1.)  According to Ferus, "it appears" that the plaintiff brought this action "in an effort to try to exact a settlement of or otherwise retaliate for a separate case in this Court."[5] (*Id*. at 1.)  Ferus also moves to dismiss for improper venue.  (*Id*. at 10–14.)

AISG counters that "Clearway has almost 20 energy sites in [New York] representing prospective business [ ] from an already existing customer of over 10 years" (ECF No. 29 at 11), and that Ferus has "inflicted actual and potential loss of business in New York from Clearway." (*Id*. at 9.)  Thus, AISG argues, jurisdiction and venue are proper.

---

[5] *Bennett v. AISG et al.*, No. 21-CV-5054 (E.D.N.Y. Sept. 10, 2021).

**LEGAL STANDARD**

When a defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Id.*; *see also Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) ("[U]ntil discovery takes place, a plaintiff is required only to make a *prima facie* showing by pleadings and affidavits that jurisdiction exists."); *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) ("[A] complaint will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are legally sufficient allegations of jurisdiction.") (citations and quotation marks omitted). The Court "constru[es] all pleadings and affidavits in the light most favorable to the plaintiff and resolv[es] all doubts in the plaintiff's favor." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).

On a motion to dismiss for improper venue under Rule 12(b)(3), the Court applies the same standard of review as a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). *See Gulf Ins. Co. v. Glasbrenne*r, 417 F.3d 353, 355 (2d Cir. 2005). While "the plaintiff bears the burden of establishing that venue is proper," *Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F.Supp.2d 543, 551 (E.D.N.Y. 2011) (quoting *French Transit v. Modern Coupon Sys.*, 858 F. Supp. 22, 25 (S.D.N.Y. 1994)), "[i]f the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of [venue]," *Gulf Ins. Co.*, 417 F.3d at 355 (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 364–65 (2d Cir. 1986)).

Whether to dismiss an action for improper venue is within the Court's discretion.  *See Cold Spring Harbor Lab.*, 762 F. Supp. 2d at 551 (citing *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993)).  In determining whether venue is proper, the court "must view all facts in the light most favorable to the plaintiff."  *Id.* (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir.2007)).  Accordingly, "the Court must accept the facts alleged in the complaint and construe all reasonable inferences in the plaintiff's favor."  *Matera v. Native Eyewear, Inc.*, 355 F. Supp. 2d 680, 681 (E.D.N.Y. 2005).

## DISCUSSION

## I.      Personal Jurisdiction

"There are two types of personal jurisdiction: specific and general."  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014).  "General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity.  Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum."  *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (citations omitted).

"The breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located."  *O'Keefe v. Blue & Gold Fleet L.P.*, 634 F. Supp. 2d 284, 286 (E.D.N.Y. 2009) (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)).  In New York, general jurisdiction is governed by N.Y. CPLR § 301, which preserves the common law notion that "a court may exercise general jurisdiction over a nondomiciliary defendant if the defendant is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction."  *Chatwal Hotels & Resorts LLC v.*

*Dollywood Co.*, 90 F. Supp. 3d 97, 103 (S.D.N.Y.2015) (citing *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990)).

The plaintiff does not allege that Ferus' New York contacts are "continuous and systematic." Accordingly, the Court must evaluate whether the plaintiff has adequately pled specific personal jurisdiction. Further, "[i]f the exercise of jurisdiction is appropriate under [New York's long-arm statute], the court must decide whether such exercise comports with the requisites of due process." *O'Keefe*, 634 F. Supp. 2d at 286 (quoting *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)): *see also Villanova v. Harbilas*, No. 08-CV-10448, 2010 WL 1640187, at *3 (S.D.N.Y. Apr. 12, 2010) ("If plaintiff is able to establish a factual predicate for jurisdiction under the laws of the forum state . . . then the court must consider whether the exercise of jurisdiction violates due process.").

### a.    Long-Arm Jurisdiction

C.P.L.R. § 302(a), New York's long-arm statute, permits specific personal jurisdiction over a non-domiciliary who, as relevant here:

(1) "transacts any business within the state;"

(2) "commits a tortious act within the state;" or

(3) "commits a tortious act without the state causing injury to person or property within the state [ ] if he (i) regularly does or solicits business . . . in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate commerce."

Ferus has not transacted business or committed a tortious act in New York State, so §§ 302(a)(1), (2) and (3)(i) do not apply.[6]

To establish jurisdiction under § 302(a)(3)(ii), the plaintiff must show that (1) "the defendant's tortious act was committed outside New York," (2) "the cause of action arose from

---

[6] AISG argues for specific personal jurisdiction only under CPLR § 302(a)(3)(ii).

that act," (3) "the tortious act caused an injury to a person or property in New York," (4) "the

defendant expected or should reasonably have expected that his or her action would have

consequences in New York," and (5) "the defendant derives substantial revenue from interstate

or international commerce." *Penguin Grp.*, 609 F.3d at 35. The parties dispute only whether

Ferus caused injury within New York State and whether the consequences of Ferus's actions

were reasonably foreseeable. (ECF No. 30 at 3.)

**i.      AISG plausibly alleges Ferus caused injury in New York.**

Personal jurisdiction pursuant to § 302(a)(3)(ii) requires a "more direct injury . . . and a

closer expectation of consequences within [New York]" than the indirect or speculative losses

that may result from the mere fact of the plaintiff's residence in New York. *Elcan Indus., Inc. v.*

*Cuccolini, S.R.L.*, No. 13-CV-4058, 2014 WL 1173343, at *5 (S.D.N.Y. Mar. 21, 2014) (quoting

*Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980)). To determine

whether there is jurisdiction under this theory, a court looks to "the original event which caused

the injury," *Bank Brussels Lambert v. Fiddler Gonzales & Rodriguez*, 171 F.3d 779, 791 (2d Cir.

1999), otherwise described as the "situs of injury" test. Whether an event is "original,"

particularly in the commercial tort context, requires a careful examination of New York and

Second Circuit precedent.

Section 302(a)(3) was enacted to address physical injuries in New York alleged to have

been caused by nonresidents. *See Am. Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*,

439 F.2d 428, 432–33 n. 4 (2d Cir. 1971); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir.

1997) ("In 1966, the New York Legislature enacted N.Y. CPLR § 302(a)(3) to close the

substantial gap in New York's possible exercise of jurisdiction over non-residents created by the

inapplicability of N.Y. CPLR § 302(a)(2) to torts performed by non-residents outside New York

yet causing injury within New York.") Plaintiffs bringing negligence and other physical tort

8

lawsuits often relied on this statute. *See e.g.*, *Malczuk v. Michaels Org.*, 70 Misc. 3d 218, 221 (N.Y. Sup. Ct. 2020); *Gould v. Moran Towing Corp.*, No. 12-CV-5046, 2014 WL 1343130, at *3 (E.D.N.Y. Apr. 3, 2014); *Cortlandt Racquet Club, Inc. v. Oy Saunatec, Ltd.*, 978 F. Supp. 520, 523 (S.D.N.Y. 1997); *Martinez v. Am. Standard*, 91 A.D.2d 652 (2d Dept.1982), *aff'd*, 60 N.Y.2d 873 (1983).  For example, in an early case applying this statute, *Hermann v. Sharon Hosp., Inc.*, a New York resident sued a Connecticut hospital for injuries sustained in Connecticut.  135 A.D.2d 682, 683 (2d Dep't 1987).  The injures were allegedly caused by the hospital staff's and treating physicians' negligence.  *Id*.  The Appellate Division, Second Department held that "CPLR 302(a)(3) is inapplicable here, since the alleged injury occurred in Connecticut."  *Id*. ("The situs of injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff."). The "original event" occurred where she received medical treatment, not where the plaintiff was domiciled.  *Id*.

   In 1978, the New York Court of Appeals applied the "situs of injury" test to commercial harm.  *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 205 (1978).  Sybron, a New York corporation, sued De Dietrich, a New Jersey competitor, for misappropriation of trade secrets.  De Dietrich allegedly hired the plaintiff's former employee to steal confidential information and, in turn, the plaintiff's New York customers.  Although De Dietrich had "no New York office or employees," the plaintiff sufficiently alleged "a conscious plan to engage in unfair competition and misappropriation of trade secrets which would cause business from New York sales to suffer significantly."  *Id*. at 205. Thus, the *Sybon* court concluded that courts may exercise personal jurisdiction over out-of-state defendants whose actions threaten to interfere unlawfully with the plaintiff's business.

Since *Sybron*, the Court of Appeals has held that a plaintiff satisfies § 302(a)(3)(ii) if it establishes the threatened loss of *prospective* New York business.  *See e.g.*, *Grenada Television Int'l, Ltd. v. Lorindy Pictures Int'l, Inc.*, 606 F. Supp. 68, 71–72 (S.D.N.Y. 1984) (finding direct injury by Florida corporation and California individual to prospective business in New York because the plaintiff, a New York corporation, was in the business of distributing films throughout the United States, and New York was 'the largest television market in the United States"); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 568 (S.D.N.Y. 2000) ("Injury within the state includes harm to a business in the New York market in the form of lost sales or customers.  This rule is satisfied by Citigroup's claim that its actual and potential customers in New York are confused or deceived when they view and interact with the City National web sites.") (citations omitted); *777388 Ontario Ltd. v. Lencore Acoustics Corp.*, 142 F. Supp. 2d 309, 324 (E.D.N.Y. 2001) ("Plainly, the alleged raiding of Lencore's customers and sales representatives and the extraction of trade secrets by fraudulent means threatened to destroy Lencore's reputation in New York and to divert potential customers, such as the Reuters client, away from Lencore.").[7]  To do so, however, a plaintiff must allege specific facts establishing the anticipated commercial harm and identifying the threatened future customers; speculative or conclusory allegations will not suffice.  *See, e.g.*, *Plastwood Corp. v. Robinson*, No. 04-CV-3214, 2004 WL 1933625, at *6 (S.D.N.Y. Aug. 30, 2004); *Data Commc'n, Inc. v. Dirmeyer*, 514

---

[7] In recent decades, courts in this Circuit also developed a framework under § 302(a)(3)(ii) to evaluate personal jurisdiction in copyright and trademark infringement lawsuits.  *See e.g.*, *Penguin Group (USA) Inc. v. American Buddha*, 16 N.Y.3d 295 (2011); *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 16-CV-442, 2017 WL 449913, at *2 (S.D.N.Y. Jan. 18, 2017); *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 241 (S.D.N.Y. 2010); *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 470 (S.D.N.Y. 2008).  Since the advent of the internet, the same is true for cases involving the use of websites and online materials as a jurisdictional hook.  *See e.g.*, *Zimmerman v. Cornell Outdoor Educ.*, No. 3:20-CV-892, 2021 WL 75736, at *5 (N.D.N.Y. Jan. 8, 2021); *Sidik v. Royal Sovereign Int'l, Inc.*, No. 17-CV-7020, 2020 WL 5441306, at *7 (E.D.N.Y. Sept. 10, 2020) *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 103 (S.D.N.Y. 2015).

F. Supp. 26, 32 (E.D.N.Y. 1981).  The critical question is "where the first effect of the tort was located" that produced the "final economic injury."  *Bank Brussels*, 171 F.3d at 792.

The Court has not found—and the parties have not cited—precedent that directly answers whether personal jurisdiction over Ferus is appropriate based on allegations that Ferus interfered tortiously with AISG's future commercial relationship in New York, even though the alleged commercial harm involved Clearway projects outside of New York.  Accordingly, the Court must consider the history of § 302(a)(3)(ii) and analogous precedent applying this statute to decide where the "first effect of the tort was located."  *Id.*

Ferus argues that AISG has not pled specific facts to show "that Ferus intentionally targeted the New York market or Clearway's New York operations," a finding Ferus asserts is necessary to establish long-arm jurisdiction.  (ECF No. 30 at 6.)  Ferus says that it does business only out of Missouri, and that none of the projects it allegedly "solicited away" are in New York.  Accordingly, assuming that Ferus stole the Hawaii Clearway project, the "alleged misappropriation of AISG's confidential information"—the relevant injury—"would have occurred in Missouri."  (ECF No. 30 at 7 (quoting *AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 361 (S.D.N.Y. 2014) ("[F]or claims involving a nonphysical, commercial injury" "the situs of the injury is where the critical events associated with the dispute took place.")).  That the misappropriated engineering plans were developed in New York, or the fact that Bennett's RCA is a New York contract, "is merely a matter of fortuitous domicile[ ] rather than situs of injury."  (*Id.* at 8 (quoting *AVRA*, 41 F. Supp. 3d at 362)).

AISG responds that Ferus induced Bennett to breach the RCA "so that it could misappropriate AISG's confidential information and trade secrets in order to unfairly compete."  AISG points out that Clearway has three solar farms in New York with "more than a dozen . . .

11

in development throughout New York;" thus, Clearway has a "substantial presence in New York." According to AISG, "it would be absurd to contend" that Clearway is not an AISG customer.[8]

In the Court's view, AISG has the better argument. Ferus reads the "situs of injury" test too narrowly. AISG alleges that Bennett, Borkowski and Luber communicated for "months" to "devise a plan" to abscond with AISG's confidential and proprietary information. During this period, Bennett lived and worked in New York. When Bennett resigned from AISG in February 2021, Terra immediately hired him as vice president of sales. Luber also formed Ferus within days of Bennett's resignation. Although Bennett "was recently terminated" from Terra, he still maintains a Ferus email address—the same email address that was given to Clearway as a vendor contact and is listed in ¶ 4.1(2) of Clearway's Security Standards. Construing these facts in the light most favorable to the plaintiff, as I must, the plaintiffs have sufficiently pled at this stage of the litigation that the defendants intentionally targeted AISG's New York employee.

AISG further alleges that Ferus targeted Clearway projects that AISG was already soliciting. Ferus says that "[the plaintiff] does not allege any loss of New York customers or New York sales as a result of conduct by [ ] Ferus" (ECF No. 28-1 at 8), because, for example, one of the allegedly stolen Clearway projects was in Hawaii. As discussed above, the most "apt" situs of injury for commercial torts like unfair competition is the "place where plaintiff lost business" because it would "normally be a forum reasonably foreseeable by a tortfeasor and . . . would usually be the place where the critical events associated with the dispute took place." *Am. Eutectic*, 439 F.2d at 433. While AISG clearly lost business in Hawaii, it also alleges facts

---

[8] *See* ECF No. 29-3 ¶ 6 ("To say, as Ferus does, that Clearway is not a New York customer because its main office is in San Francisco, CA, is like saying that National Grid, which provides gas service throughout New York City and the New York region, is not a New York customer because National Grid is headquartered in London. This is nonsensical.").

demonstrating that Clearway is a longstanding customer that has hired—or considered hiring—
AISG for projects around the country.  Further, the allegedly misappropriated engineering
specifications are used for multiple customer projects, both in and outside of New York.  And,
because Clearway has current and developing solar farms in New York, it is logical that
Clearway offered AISG significant business prospects here.

Ferus' reliance on *AVRA* and *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.
Ltd.*, 568 F. Supp. 2d 329, 337–38 (S.D.N.Y. 2008), is misplaced.  In *AVRA*, functionally every
alleged tortious activity occurred in Germany; thus, the situs of injury "belongs in Germany
rather than New York."  *AVRA*, 41 F. Supp. 3d at 362.  In *Darby*, the court found that the
plaintiff "had not alleged any injury in the form of decreased sales in the New York market or
lost customers in the New York market."  568 F. Supp. 2d at 337.  Rather, the plaintiff submitted
declarations that it lost customers and goodwill in Brazil, India, and Mexico; "it ma[de] no
mention of any New York-based companies."  *Id.*  By contrast, AISG specifically alleges how its
New York business was threatened, supported by declarations about Clearway's New York
operations and exhibits connecting the allegedly misappropriated engineering specifications and
the alleged tortious interference with Clearway's business.  Accordingly, at this stage of the
litigation, AISG has established a *prima facie* case that Ferus caused injury in New York, and
thus has established jurisdiction under § 302(a)(3)(ii).  *Modern Computer Corp. v. Ma*, 862 F.
Supp. 938, 945 (E.D.N.Y. 1994).

ii.      **AISG's alleged injuries were reasonably foreseeable.**

To show "reasonable foreseeability," which New York courts construe "in a manner
consistent with United States Supreme Court precedent" to "avoid conflict with federal
constitutional due process requirements," *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 241 (2d
Cir.1999), the plaintiff must demonstrate that a "defendant's conduct and connection with the

forum state [be] such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  New York courts look for "tangible manifestations" of a defendant's intent to target New York, or for "concrete facts known to the nondomiciliary that should have alerted it" to the possibility of being brought before a court in the Eastern District of New York.  *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F. Supp. 494, 497–98 (S.D.N.Y. 1997) (citations omitted); *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 423 (S.D.N.Y. 2009).

AISG sufficiently alleges that Ferus was aware of "concrete facts" that it would be subject to the jurisdiction of this Court.  Specifically, AISG claims that Ferus' managing member intentionally targeted Bennett in New York, and colluded with Terra to hire Bennett and use AISG's confidential and proprietary information to target at least one longstanding AISG customer with a national presence and a substantial presence in New York.  "Common sense dictates that a company using information gathered in New York to wage war on another company's New York business prospects would not be immune to being haled into a New York forum merely because it launched its attack elsewhere." *Symmetra Pty Ltd. v. Hum. Facets, LLC*, No. 12-CV-8857, 2013 WL 2896876, at *7 (S.D.N.Y. June 13, 2013).

AISG has established a *prima facie* case of specific personal jurisdiction under New York's long-arm statute.

**b.    Federal Due Process**

Finally, the Court must decide whether exercising jurisdiction over Ferus comports with the Due Process Clause of the Fourteenth Amendment, which "protects a person without meaningful ties to the forum state from being subjected to binding judgments within in its jurisdiction." *Metro. Life Ins. C. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996).  To

14

do so requires analyzing whether AISG has sufficiently alleged (i) minimum contacts and (ii) reasonableness. *Id*. As to the minimum contacts inquiry, the Court considers whether "the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). For the reasonableness inquiry, the Court considers whether "the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id*. (cleaned up).

Ferus says that it has no contacts with "nor has it purposefully availed itself of the privilege of conducting activity in New York." (ECF No. 30 at 12.) Ferus dismisses AISG's claims as "irrelevant" because AISG's operations and customer relations base is "of no moment." (*Id*.) This argument is not persuasive. The plaintiff alleges that Ferus induced a New York employee to leave a New York company, breach a New York contract and steal at least one prospective New York customer with a nationwide presence. This is enough to establish some minimum contacts with New York.

The minimum contacts inquiry is inversely related to the reasonableness inquiry. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002). "The more reasonable the assertion of jurisdiction, the weaker the defendant-forum links necessary support it." *Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 126 (E.D.N.Y. 2000). Ferus has not demonstrated that litigating in New York poses an unreasonable burden. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 731 (2d Cir. 2012) (holding that the burden of travel to defend a lawsuit, alone, does not render the exercise of personal jurisdiction unreasonable).

## II.   Venue

Venue is proper where "a substantial part of the events or omissions giving rise to the claim" occurred, or "if there is no district in which an action may otherwise be brought," "any judicial district in which any defendant is subject to the court's personal jurisdiction."  28 U.S.C. § 1391(b)(2)-(3).  The plaintiff bears the burden of establishing that venue is proper once an objection to venue has been raised.  *See D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F. Supp 320, 321 (S.D.N.Y. 1996).  Where no evidentiary hearing has been held, "the plaintiff need only make a *prima facie* showing of [venue]."  *Gulf Ins. Co.*, 417 F.3d at 355.  Such a showing requires "legally sufficient allegations, including an averment of facts that, if credited, would suffice to establish that . . . venue is proper."  *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, No. 16-CV-2205, 2017 WL 4997838, at *4 (S.D.N.Y. Oct. 20, 2017) (quoting *BMW of N. Am. LLC v. M/V Courage*, 254 F. Supp. 3d 591, 596 (S.D.N.Y. 2017)).  In its venue analysis, the Court "must view all facts in the light most favorable to the non-moving party."  *Id*. (quoting *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011)).

Section 1391(b)(2) does not require venue in the district with the most substantial contacts to the dispute.  Rather, it is sufficient that a substantial part of the events occurred in the challenged venue, even if more events occurred elsewhere.  *See* David D. Siegel, Commentary on 1990 Revision of Subdivisions (a), (b), and (e) at 4, 28 U.S.C.A. § 1391 (Supp.1993); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865 (2d Cir.1992).  "The current venue standard, thus, acknowledges the more porous borders of the electronic age, where events can be influenced anywhere in the world by fax, phone and keystroke, and recognizes that a person acting predominantly in one state can easily cause his or her acts to have effects outside the borders of

that state." *Astor Holdings, Inc. v. Roski*, No. 01-CV-1905, 2002 WL 72936, at *8 (S.D.N.Y. Jan. 17, 2002).

For the reasons discussed above, and viewing the complaint in the light most favorable to the non-moving party, AISG has demonstrated that a "substantial part" of the alleged tortious conduct occurred in New York, and therefore, that venue is proper in the Eastern District of New York. "The gravamen of a complaint for misappropriation is the wrongful taking of a trade secret . . . ." *Universal Marine Med. Supply, Inc. v. Lovecchio*, 8 F. Supp. 2d 214, 220 (E.D.N.Y. 1998). The allegations stating that Luber—through Ferus—and Terra induced Bennett to leave his New York employer, breach his New York contract, and steal significant New York business prospects from AISG are more relevant to this inquiry. In other words, a substantial part of the alleged interference and misappropriation happened in New York, which is the location of the confidential information that the defendants allegedly sought. By contrast, it is less relevant, for example, that Ferus is incorporated in Missouri and that Luber has "not physically entered the state of New York in approximately twenty years."

Venue is also proper under § 1391(3), since, as stated above, defendant is subject to personal jurisdiction in New York. *Kraemer Exp. Corp. v. Peg Perego U.S.A., Inc.*, No. 93-CV-0198, 1994 WL 86357, at *4 (S.D.N.Y. Mar. 17, 1994).

## CONCLUSION

For these reasons, the defendant's motion to dismiss is denied.


**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge


Dated: Brooklyn, New York
       September 28, 2023